United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARTIN MURRAY,                              No. C 09-5744 CW

      Plaintiff,                     ORDER DENYING
                                            MOTION FOR CLASS
    v.                                    CERTIFICATION
                                            (Docket No. 167)
SEARS, ROEBUCK AND CO., et al.,

      Defendants.
_____/

     Plaintiff Martin Murray brought this action against
Defendants Sears, Roebuck and Co. and Electrolux Home Products,
Inc. alleging violations of California consumer protection law.
He now moves for class certification.  Defendants oppose the
motion.  The Court took the matter under submission without oral
argument and now denies the motion for the reasons set forth
below.

BACKGROUND

     Murray purchased a Kenmore-brand clothes dryer from a Sears
store in San Bruno, California in September 2001.  After using the
dryer for two to three years, he began to notice stains appearing
on his clothing.  Eventually, when tears and cuts started to
appear near the stains, Murray began to suspect that his dryer
might be the cause.  In 2007, he removed the dryer's door to
inspect the inside of the machine and observed that rust had
developed on the frontal exterior of the dryer's "drum," the
cylindrical part of the machine that holds and rotates the
clothes.  Docket No. 199, Murray Depo. 141:2-:14.  He believed

**United States District Court**
For the Northern District of California

that the stains, tears, and cuts in his clothing were the result of his clothes coming into contact with this rust during the drying process.  Id.

     In November 2009, Murray filed this putative class action in San Mateo County Superior Court on behalf of all California consumers who purchased the same Kenmore-brand dryer that he did. In his complaint, he alleged that Sears and Electrolux, the dryer's manufacturer, had marketed the dryer to consumers by promoting its "stainless steel" drum without disclosing that the drum's front -- the portion of the drum that allegedly rusted -- was actually made of a mild steel, which is more susceptible to corrosion and chipping.  Based on this alleged omission, Murray asserted claims against Defendants for unjust enrichment, breach of contract, and violations of California's Consumer Legal Remedies Act (CLRA) and Unfair Competition Law (UCL).  Defendants removed the action to this Court in December 2009 under the Class Action Fairness Act.

     On February 8, 2010, Defendants moved to stay this action until the Seventh Circuit resolved a pending appeal in a nearly identical lawsuit that had been filed in the Northern District of Illinois in 2006.  The plaintiff in that case, a Tennessee man named Steven Thorogood, had purchased the same dryer model as Murray and -- while being represented by the same counsel as Murray -- asserted a similar set of claims against Sears based on the company's allegedly deceptive marketing practices. Specifically, Thorogood sought to represent a nationwide class to pursue claims based on violations of the Tennessee Consumer Protection Act, Tenn. Code. Ann. §§ 47-18-101 et seq., and

analogous statutes in twenty-eight other states.  The district

court initially certified the class but, in 2008, the Seventh

Circuit reversed, holding that the case presented "no common

issues of law or fact, so there would be no economies from class

action treatment."  Thorogood v. Sears, Roebuck & Co., 547 F.3d

742, 747 (7th Cir. 2008) (Thorogood I).  The Seventh Circuit

explained,

> Since rust stains on clothes do not appear to
> be one of the hazards of clothes dryers, and
> since Sears did not advertise its stainless
> steel dryers as preventing such stains, the
> proposition that the other half million
> buyers, apart from Thorogood, shared his
> understanding of Sears's representations and
> paid a premium to avoid rust stains is, to put
> it mildly, implausible, and so would require
> individual hearings to verify.

Id. at 748.  After the class was decertified and the case was

remanded, the district court dismissed the action for lack of

subject matter jurisdiction and denied Thorogood's request for

attorneys' fees.  On February 12, 2010, less than a week after

Defendants moved to stay the proceedings in this Court, the

Seventh Circuit affirmed the dismissal of Thorogood's case and the

denial of his request for attorneys' fees.  Thorogood v. Sears,

Roebuck & Co., 595 F.3d 750, 752, 754 (7th Cir. 2010) (Thorogood

II) (noting that, even prior to dismissal, the court had

"expressed great skepticism of the merits of the plaintiff's

individual claim").

The Seventh Circuit's decision in Thorogood II, affirming

dismissal, resolved the appeal that originally served as the basis

for Defendants' motion to stay in this case.  However, shortly

after that decision was issued, Defendants notified the Court that

United States District Court
For the Northern District of California

Sears was planning to pursue a permanent injunction in the Northern District of Illinois under the All Writs Act,[1] 28 U.S.C. § 1651, to preclude other consumers from pursuing class-wide relief against Sears based on the same claims that were dismissed in Thorogood II.  Defendants asserted that Sears's pending request for an injunction justified a stay of Murray's case because, if the request was granted, it "would, among other things, enjoin plaintiff Martin Murray and his counsel in this action from prosecuting this action as anything other than an individual action."  See Docket No. 63, Defs.' Notice of Pendency of Other Action or Proceeding, at 2.  This Court therefore issued a temporary stay of discovery proceedings in this case in May 2010. Docket No. 87, May 11, 2010 Minute Order.

One week later, on May 18, 2010, the Northern District of Illinois issued a decision denying Sears's request for a permanent injunction.  The court reasoned that injunctive relief was not necessary because Sears could achieve the same result by asserting a defense of collateral estoppel in this action based on the Seventh Circuit's decisions in Thorogood I and Thorogood II. Sears appealed the district court's order to the Seventh Circuit.

While that appeal was pending, Defendants in this case case moved to strike the class action allegations in Murray's

---

[1] The All Writs Act provides that the "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  The Supreme Court has "repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained."  United States v. New York Tel. Co., 434 U.S. 159, 172 (1977).

United States District Court
For the Northern District of California

complaint.  Heeding the guidance of the Northern District of
Illinois's order -- the same order that Sears had just appealed --
Defendants argued that Murray was collaterally estopped from
bringing his class claims in light of the <u>Thorogood</u> decisions.  In
July 2010, this Court granted the motion to strike.  The Court
found that, "although rejection of a multi-state class does not
<u>ipso facto</u> foreclose all single-state class actions, the analysis
in the Seventh Circuit's decision and the similarities between the
factual allegations and legal theories in that case and this case,
require the application of collateral estoppel."  Docket No. 104,
Order Granting Motion to Strike, at 11.[2]

        Murray filed an amended class action complaint the following
week.  In his amended complaint, Murray added new factual
allegations that had not been asserted by Thorogood.  In
particular, he alleged that Sears and Electrolux had specifically
marketed certain Kenmore-brand dryer models, including the model
he purchased, as having an "all stainless steel drum" and
expressly represented that this feature made the dryers more
durable and less susceptible to corrosion and chipping than other
models.  <u>See</u> Docket No. 106, First Amended Complaint (1AC) ¶¶ 50-
52.  Defendants once again moved to strike the class allegations
on the grounds that Murray was collaterally estopped from
representing a class.  However, based on the new allegations in
Murray's complaint, this Court denied the motion to strike and

---

        [2] The order noted, "Because the Court has concluded that Plaintiff
cannot proceed on his class allegations, the Court need not wait for a
decision by the Seventh Circuit" on Sears's appeal of the Northern
District of Illinois' order denying Sears's motion for a permanent
injunction.  Order Granting Motion to Strike at 11-12.

United States District Court
For the Northern District of California

allowed Murray to proceed on his class claims.  Docket No. 120, Order Denying Motion to Strike, at 7-8 ("Because the allegations in the instant case are sufficiently different from those in Thorogood, the class certification issues necessarily decided in the previous proceeding are not identical to those presently before the Court.  Plaintiff is not collaterally estopped from asserting his claims on a class-wide basis.").

In November 2010, two months after this Court denied Defendants' second motion to strike, the Seventh Circuit reversed the Northern District of Illinois' order denying Sears's motion for a permanent injunction.  Thorogood v. Sears, Roebuck & Co., 624 F.3d 842 (7th Cir. 2010) (Thorogood III).  In its opinion, the court expressed disagreement with this Court's order finding that Murray had sufficiently amended his class action allegations to avoid the bar of collateral estoppel.  Id. at 852 (concluding that "Murray's suit is barred by collateral estoppel" because the minor differences between his class claims and Thorogood's do not suggest that he will be better able to meet Rule 23(a)'s commonality requirement).  The court thus held that Murray should be enjoined from proceeding on his class action claims and, further, that all other putative "members of Thorogood's class must be enjoined as well as the lawyers so that additional Murrays don't start popping up, class action complaint in hand, all over the country, represented by other members of the class action bar."  Id. at 853.  The Seventh Circuit directed the Northern District of Illinois to enter the injunction and denied Thorogood's requests for rehearing and rehearing en banc in December 2010, 627 F.3d 289 (7th Cir. 2010).

United States District Court
For the Northern District of California

The following month, January 2011, this Court stayed all discovery proceedings in light of Thorogood III and scheduled a case management conference to address how this case should proceed once the Northern District of Illinois issued its injunction barring Murray from pursuing his class claims against Defendants. Before that case management conference was held, however, Thorogood filed a petition for a writ of certiorari, which the Supreme Court granted in June 2011. 131 S. Ct. 3060, 361 (2011). In its three-sentence order, the Supreme Court vacated the Seventh Circuit's opinion in Thorogood III and remanded the case for further consideration in light of its recent decision in Smith v. Bayer Corp., 131 S. Ct. 2368 (2011), which addressed the preclusive effect of one court's class certification decision on subsequent motions for class certification in other courts.[3]

In May 2012, the Seventh Circuit instructed the Northern District of Illinois to vacate its injunction barring Murray from pursuing his class claims in this action.[4] Thorogood v. Sears, Roebuck & Co., 678 F.3d 546, 552 (7th Cir. 2012) (Thorogood IV). One month later, in June 2012, this Court lifted the stay of discovery in Murray's case and set a briefing schedule for his class certification motion. Murray now moves for class

---

[3] Both Murray and Thorogood participated in Smith as amici curiae at the briefing stage. This order discusses Smith in further depth below.

[4] The Northern District of Illinois had entered the injunction in April 2011, before the Supreme Court had granted Thorogood's petition for certiorari and vacated the Seventh Circuit's opinion in Thorogood III. See Docket No. 139-2, N.D. Ill. Injunction in Thorogood.

certification under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).[5]

LEGAL STANDARD

Plaintiffs seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b). Rule 23(a) provides that a case is appropriate for certification as a class action if

> (1)  the class is so numerous that joinder of all members is impracticable;
>
> (2)  there are questions of law or fact common to the class;
>
> (3)  the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)  the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Plaintiffs must also establish that one of the subsections of Rule 23(b) is met.  In the instant case, Plaintiffs seek certification under subsections (b)(2) and (b)(3).

Rule 23(b)(2) applies where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or

---

[5] Although Murray asserts that he is also moving for class certification "pursuant to Cal. Code of Civil Procedure § 1781," Docket No. 167, Class Cert. Mot. ii, that provision is inapplicable for two reasons.  First, "federal procedural rules govern a case that has been removed to federal court." Smith, 131 S. Ct. at 2374 n.2 (explaining that federal courts apply Federal Rule of Civil Procedure 23 to class certification decisions rather than analogous state rules of procedure). Second, section 1781 of the California Code of Civil Procedure was repealed in 2000.  Murray most likely intended to cite section 1781 of the California Civil Code, which governs consumer class actions brought in state court.

corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. Proc. 23(b)(2).

Rule 23(b)(3) permits certification where common questions of law and fact "predominate over any questions affecting only individual members" and class resolution is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are intended "to cover cases 'in which a class action would achieve economies of time, effort, and expense . . . without sacrificing procedural fairness or bringing about other undesirable results.'" Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997) (quoting Fed. R. Civ. P. 23(b)(3) Adv. Comm. Notes to 1966 Amendment).

Regardless of what type of class the plaintiff seeks to certify, it must demonstrate that each element of Rule 23 is satisfied; a district court may certify a class only if it determines that the plaintiff has borne this burden. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 158-61 (1982); Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977). In general, the court must take the substantive allegations of the complaint as true. Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975). However, the court must conduct a "'rigorous analysis,'" which may require it "'to probe behind the pleadings before coming to rest on the certification question.'" Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011) (quoting Falcon, 457 U.S. at 160-61). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." Dukes, 131 S. Ct. at 2551. To satisfy itself that class certification is proper, the

United States District Court
For the Northern District of California

court may consider material beyond the pleadings and require supplemental evidentiary submissions by the parties. Blackie, 524 F.2d at 901 n.17. "When resolving such factual disputes in the context of a motion for class certification, district courts must consider 'the persuasiveness of the evidence presented.'" Aburto v. Verizon Cal., Inc., 2012 WL 10381, at *2 (C.D. Cal.) (quoting Ellis v. Costco Wholesale Corp., 657 F.3d 970, 982 (9th Cir. 2011)). Ultimately, it is in the district court's discretion whether a class should be certified. Molski v. Gleich, 318 F.3d 937, 946 (9th Cir. 2003); Burkhalter Travel Agency v. MacFarms Int'l, Inc., 141 F.R.D. 144, 152 (N.D. Cal. 1991).

DISCUSSION

I.   Principles of Comity

    Defendants urge this Court to show comity toward the Seventh Circuit's denial of class certification in Thorogood I, 547 F.3d at 748. They argue that, under the Supreme Court's decision in Smith, a federal court must defer to any prior federal class certification decision addressing the same claims and issues. To support this claim, they cite language from Smith encouraging federal courts "to apply principles of comity to each other's class certification decisions when addressing a common dispute." 131 S. Ct. at 2382.

    While Smith requires federal courts to show respect for prior class certification rulings, it does not require that they mechanically adopt those prior rulings whenever they are presented with a motion to certify a class in a copycat lawsuit. This is especially true where, as here, a class was never certified in the earlier action and the plaintiff in the subsequent lawsuit never

10

joined the earlier action.  As <u>Smith</u> explained, "Neither a proposed class action nor a rejected class action may bind nonparties."  <u>Id.</u> at 2380.  The <u>Smith</u> Court acknowledged that this rule could lead to abuses by "class counsel [who] repeatedly try to certify the same class" with different plaintiffs in different jurisdictions but it concluded that this concern did not justify "departing from the usual rules of preclusion."  <u>Id.</u> at 2381-82 ("[O]ur legal system generally relies on principles of <u>stare decisis</u> and comity among courts to mitigate the sometimes substantial costs of similar litigation brought by different plaintiffs.  We have not thought that the right approach . . . lies in binding nonparties to a judgment.").

The Seventh Circuit has relied on this aspect of <u>Smith</u> in rejecting the same argument that Defendants advance here.  <u>Smentek v. Dart</u>, 683 F.3d 373, 377 (7th Cir. 2012) ("[T]he defendants' argument that <u>Smith v. Bayer Corp.</u> adopted a rule of comity in class action suits that <u>precludes</u> granting class certification in a copycat class action must be rejected." (emphasis in original)).  Although the court recognized that the prospect of duplicative litigation by multiple class action plaintiffs raises legitimate policy concerns,[6] it nevertheless held that federal courts are not bound to adopt other courts' prior class certification rulings.  The court explained,

---

[6] In describing this problem, the <u>Smentek</u> court specifically singled out Murray's counsel in the present case.  <u>See</u> 683 F.3d at 376-77 ("Without a rule of preclusion, class action lawyers can do what the lawyer here (and the lawyer in <u>Thorogood</u>) did: keep bringing identical class actions with new class representatives until they draw a judge who is willing to certify the class.").

United States District Court
For the Northern District of California

> How are courts or legislatures to prevent class action litigation from metastasizing? The rule urged by the defendants in this case that the denial of class certification bars the certification of the same or a similar class in a suit by a member of the same class as the previous suit might do the trick, but it would contradict the holding of Smith v. Bayer Corp., which is that a class member who did not become a party to the previous parallel class action is not precluded from seeking class certification in his class action.

Id. (citations omitted).  Based on this reasoning, the court concluded, "We are left with the weak notion of 'comity' as requiring a court to pay respectful attention to the decision of another judge in a materially identical case, but no more than that even if it is a judge of the same court or a judge of a different court within the same judiciary."  Id. at 377.  A court in this district subsequently cited Smentek in concluding that "consideration of previous decisions on an identical class action is not mandatory but discretionary."  Williams v. Foods, 2013 WL 4067594, at *1 (N.D. Cal.).  These decisions, along with Smith itself, make clear that Thorogood I does not preclude Murray from moving for class certification in this case.

Nevertheless, even if Thorogood I is not dispositive here, it remains persuasive.  Murray's factual allegations and supporting evidence are nearly identical to the allegations and evidence that Thorogood submitted in his failed bid for class certification and, as explained further below, they contain many of the same deficiencies.  Thus, while Thorogood I does not compel a denial of class certification here, as Defendants contend, it provides strong guidance in deciding Murray's motion and must be afforded "respectful attention."  Smentek, 683 F.3d at 377.

II.  Rule 23(a)

     Murray moves to certify the following class:

          all persons in the state of California who
          purchased from Sears, through a Sears retail
          store or on the Sears website at www.sears.com
          within the applicable statute of limitations
          period for each claim, a Kenmore or Frigidaire
          laundry dryer classified with a stainless
          steel drum and the drum front was not made of
          stainless steel that was manufactured by
          Electrolux.

Class Cert. Mot. 11.  Murray asserts that there are at least forty

Kenmore-brand dryer models and at least ten Frigidaire-brand dryer

models which are sold by Sears, manufactured by Electrolux, and

contain a stainless steel drum with a non-stainless steel drum

front.  Docket No. 167-2, Boling Decl. ¶ 13.

     A.  Numerosity

     The parties have stipulated that thousands of California

consumers purchased the Kenmore-brand dryer models identified in

Murray's proposed class definition.  See Docket No. 198-1, Oliss

Decl., Ex. A, Stipulated Facts ¶¶ 3-4.  Murray has not

specifically identified how many of these consumers purchased

dryers "within the applicable limitations period" or how many

purchased Frigidaire-brand dryers.  Nonetheless, because

Defendants do not deny that these numbers would satisfy Rule

23(a)'s numerosity requirement, the Court assumes that this

requirement has been met.

     B.  Commonality

     Rule 23 contains two related commonality provisions.  Rule

23(a)(2) requires that there be "questions of law or fact common

to the class."  Rule 23(b)(3), in turn, requires that these common

United States District Court
For the Northern District of California

questions predominate over individual ones.  This section
addresses only whether Murray has satisfied Rule 23(a)(2)'s
requirements, which are "less rigorous than the companion
requirements of Rule 23(b)(3)."  Hanlon v. Chrysler Corp., 150
F.3d 1011, 1019 (9th Cir. 1998) ("Rule 23(a)(2) has been construed
permissively.").  The Ninth Circuit has made clear that Rule
23(a)(2) may be satisfied even if fewer than all legal and factual
questions are common to the class.  Meyer v. Portfolio Recovery
Associates, LLC, 707 F.3d 1036, 1041 (9th Cir. 2012) ("'All
questions of fact and law need not be common to satisfy the
[commonality requirement].'" (citations omitted; alterations in
original)), cert. denied, 133 S. Ct. 2361 (2013).

As noted above, the Seventh Circuit held that class
certification was inappropriate in Thorogood I because "there
[were] no common issues of law or fact" in that case.  547 F.3d at
747.  The court reasoned that commonality was lacking because
Thorogood failed to present evidence that "Sears advertised the
dryers as eliminating a problem of rust stains by having a
stainless steel drum."  Id. ("Advertisements for clothes dryers
advertise a host of features that might matter to consumers, such
as price, size, electrical usage, appearance, speed, and controls,
but not, as far as anyone in this litigation has suggested except
the plaintiff, avoidance of clothing stains due to rust.").
Without this evidence, the court concluded, "Each class member who
wants to pursue relief against Sears [would] have to testify to
what he understands to be the meaning of a label or advertisement
that identifies a clothes dryer as containing a stainless steel
drum."  Id.  Although the court noted other problems with the

14

United States District Court
For the Northern District of California

proposed class, it explained that the "deal breaker [was] the absence of any reason to believe that there is a single understanding of the significance of labeling or advertising clothes dryers as containing a 'stainless steel drum.'"   Id.

Murray's motion for class certification suffers from the same fatal defect.  Like Thorogood, he has failed to present any evidence that Defendants represented on a class-wide basis that the dryer's drum front was made of stainless steel (rather than mild steel) and that this feature would prevent its user's clothes from developing rust stains or tears.  Although Murray points out that some of Sears's sales managers acknowledged during their depositions that the company promoted the stainless steel drums in advertisements, none of these managers testified that Sears marketed the drums as preventing rust stains or tearing.  One product manager testified that he did not know why the company chose to promote the stainless steel drum.  Pigatto Depo. 223:22-224:7 ("I don't really know [the benefits of a stainless steel drum].  I'm not an engineer.  I guess at this point, the perception and my understanding is, the more you use, the smoother it gets.").[7]  Another testified that she believed the stainless

---

[7] Rather than citing to the relevant page-and-line numbers of the deposition transcripts he submitted as evidence, Murray instead cites to a series of "Deposition Statements" which purport to summarize the deposition testimony on which he wishes to rely.  See Docket Nos. 170-71.  Defendants object to these deposition summaries -- which total over one hundred pages in length -- because Murray prepared them himself. This objection is sustained.  "The Court bases its decisions on what the evidence shows, not on how a party has characterized the evidence." eForce Global, Inc. v. Bank of America, 2010 WL 2573976, at *2 (N.D. Cal.); see also Harris v. City of Seattle, 152 Fed. Appx. 565, 568 (9th Cir. 2005) (unpublished opinion) (noting that the plaintiff's "characterization of [a witness]'s deposition testimony does not represent probative evidence").  The Court relies in this order only on

steel drum was marketed as an aesthetic feature.  Christensen

Depo. 32:9-:10.  A third Sears employee simply referred Murray to

Sears's marketing team when asked about the company's advertising

practices.  Wood Depo. 57:4-:13, 60:6-:17.  None of this testimony

supports Murray's claim that California consumers, as a class,

were likely to be confused by Sears's marketing claims.

While some of Sears's promotional materials state that the

Kenmore-brand dryers feature an "exclusive, all stainless-steel

drum that provides lasting durability," King Depo. 133:11-:13,

this hardly qualifies as a material misrepresentation.  As the

Seventh Circuit explained when it examined this same evidence in

Thorogood III,

> It's true that stainless steel does not rust
> or chip, and therefore a dryer that is made,
> even if only in part (the drum), of stainless
> steel should indeed provide "lasting
> durability."  But the claim is not falsified
> if a small part of the drum is made of "mild"
> steel coated with ceramic.  And a dryer's
> durability has nothing to do with rust stains
> in clothing, Thorogood's contention and
> Murray's as well.

624 F.3d at 851; see also Thorogood IV, 678 F.3d at 549 ("Some of

Sears' ads do point out that stainless steel doesn't rust, but no

one likes rust, whether or not the rust rubs off on clothes.").

The only evidence Murray has presented to suggest that Sears

specifically represented that the stainless steel drum would

protect clothes from rust stains is his own interaction with a

salesperson at Sears's San Bruno store.  Murray stated in his

declaration that the salesperson "represented that the Product

the actual deposition transcripts attached to Murray's deposition
summaries, even though Murray himself neglected to cite to them.

United States District Court
For the Northern District of California

consisted of a stainless steel drum, which affected the performance, quality, benefit and value of the dryer, in that the stainless steel drum could not chip, rust or stain clothing placed inside it for drying." See Docket No. 167-4, Murray Decl. ¶ 4. But Murray's account of his personal experience at a single Sears store does not suggest that Sears made this representation about the Kenmore-brand dryers on a class-wide basis.  Nor does it suggest that Sears ever made such a representation about the Frigidaire-brand dryers nor that Electrolux ever made similar representations about either brand of dryers.  If anything, this isolated (and uncorroborated) incident of allegedly deceptive marketing suggests that Murray's claims, much like Thorogood's, are highly "idiosyncratic" and, thus, not amenable to class-wide proof.  Thorogood I, 547 F.3d at 747.

Indeed, Murray's failure to identify any other class member whose clothes were stained by rust only reaffirms that his claimed injury here is unique.  He has not offered any evidence to suggest that other California consumers' clothes were ever damaged by Kenmore or Frigidaire dryers.  In fact, when he was asked during his deposition whether he knew of "any other person who has had the same failure that [he] had in a Kenmore stainless steel drum," he responded, "Other than Mr. Thorogood, no."  Murray Depo. 173:18-:21.  This response is consistent with the testimony offered by a Sears service technician and a customer service specialist who, collectively, could only recall receiving two complaints -- one of which came from Thorogood -- about rust developing on the front of a stainless steel dryer drum.  See Docket No. 198, Hess Depo. 16:5-:22; Daley Depo. 20:14-:18.

**United States District Court**
For the Northern District of California

Despite this lack of evidence of any common misrepresentation or injury, Murray contends that his claims raise common questions of law. He argues that common questions must be resolved as to whether Defendants' alleged misrepresentations regarding the dryer's drum were material and whether they were likely to mislead a reasonable consumer. See generally Gustavson v. Wrigley Sales Co., 2013 WL 5201190, at *19 (N.D. Cal.) ("The standard for establishing a violation of California's UCL, FAL, and CLRA is the 'reasonable consumer' test, which requires a plaintiff to 'show that members of the public are likely to be deceived' by the business practice or advertising at issue." (citations omitted)). These questions, however, would only be relevant to all putative class members if Murray had adduced some evidence to suggest that Defendants had actually made misrepresentations on a class-wide basis. As explained above, Murray's evidence suggests, at most, that Sears engaged in an isolated instance of deception in California when Murray went to purchase his own dryer in 2001. This evidence is not sufficient to give rise to any relevant questions of law that are common to all potential class members. Accordingly, because he has not identified any common questions of fact or law that pertain to every class member, Murray has failed to meet the commonality prerequisite.

C.   Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Thus, every "class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Falcon, 457 U.S. at 156 (quoting E. Tex.

United States District Court
For the Northern District of California

Motor Freight Sys., Inc. v. Rodriguez, 431 U.S. 395, 403 (1977))
(internal quotation marks omitted).  This requirement is usually
satisfied if the named plaintiffs have suffered the same or
similar injuries as the unnamed class members, the action is based
on conduct which is not unique to the named plaintiffs, and other
class members were injured by the same course of conduct.  Hanon
v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).
Typicality is not met, however, "where a putative class
representative is subject to unique defenses which threaten to
become the focus of the litigation."  Id. (quoting Gary Plastic
Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
903 F.2d 176, 180 (2d Cir. 1990).

Murray has failed to satisfy the typicality requirement here
for the same reasons he has failed to satisfy the commonality
requirement: specifically, he has not presented evidence of any
class-wide misrepresentations or class-wide injury.  As explained
above, the only evidence here that Defendants ever specifically
represented that their dryers' stainless steel drums protect
clothes from rust stains comes from Murray's own isolated
experience at the San Bruno Sears store.  Murray has not presented
any evidence to suggest that either Defendant ever made the same
representations to other California consumers.  Nor has he
presented any evidence to suggest that other California consumers
ever had the same problems with the Kenmore-brand dryers that he
had.  On this record, Murray's experience is not representative of
that of the proposed class.

Murray is atypical in other ways, as well.  For instance, he
stated repeatedly during his deposition that when he first

inspected the interior of his dryer in 2007, he noticed that the entire drum was loose. Murray Depo. 143:6-:10, 144:24-145:1, 154:23-:25 ("I could feel that the drum was loose, that it was actually moving and not firmly in contact with whatever was supposed to hold it in."). In fact, he testified that the loose drum was most likely what caused his clothes to become exposed to the rust in the first place because the rust had only developed on the <u>exterior</u> portion of the drum front -- a part of the dryer that would not normally come into contact with any clothes. <u>Id.</u> 142:22-:24, 143:15-:16, 154:17-155:5. This admission -- that other problems with Murray's dryer may have contributed to the rust stains he experienced -- leaves him vulnerable to fact-based defenses that could not be raised against other class members. <u>Hanon</u>, 976 F.2d at 508 (recognizing that typicality is not met where a plaintiff's "unique background and factual situation require him to prepare to meet defenses that are not typical of the defenses which may be raised against other members of the proposed class"). This is especially true here, where the evidence shows that Electrolux changed the way that it installed its dryer drums in 2002, shortly after Murray purchased his dryer. Docket No. 197-1, King Decl. ¶¶ 12-15 (describing how "beginning around 2002, Electrolux redesigned the suspension system of the Kenmore dryers" by changing the way that the drum was attached to the rest of the machine).

In addition to these unique fact-based defenses, Murray is also subject to unique legal defenses based on the statute of limitations for each of the claims he asserts. The relevant limitations periods here are four years for Murray's contract

claim, Cal. Code Civ. Proc. § 337; four years for his UCL claim, Cal. Bus. & Prof. Code § 17208; three years for his CLRA claim, Cal. Civ. Code § 1783; and three years for his unjust enrichment claim, Cal. Code Civ. Proc. § 338(d).  Thus, because Murray purchased his dryer in September 2001, all of his claims would have expired in September 2004 or September 2005, absent equitable tolling or some other rule of delayed accrual.  Murray contends that his claims -- which he did not file until November 2009 -- are not time-barred because they are subject to equitable tolling and the delayed-discovery rule.  These arguments, however, rest on two highly dubious premises.  The first is that Murray could not have discovered that his dryer was damaging his clothes until after the limitations period elapsed.  Given Murray's admission that he began to notice rust stains on his clothes within three years of purchasing the dryer, this claim will be difficult to establish.  The second questionable premise is that Murray's claims are sufficiently similar to Thorogood's claims to justify tolling the limitations period during the pendency of Thorogood's lawsuit.  This, too, will be difficult to establish in light of Murray's efforts to distinguish his case from Thorogood's throughout this litigation (including in the instant motion).  In any case, Defendants need not establish conclusively at this stage that Murray's delayed-discovery and equitable tolling arguments are entirely without merit.  For the purposes of Rule 23(a), it is enough for them to establish that their limitations defense against Murray could "threaten to become the focus of the litigation."  Hanon, 976 F.2d at 508.  Because Murray purchased his dryer more than eight years before he filed this action --

twice the length of the longest applicable limitations period here -- and his delayed-discovery and equitable tolling arguments appear particularly weak, Defendants have met this burden.

Finally, Murray has not presented sufficient evidence to establish that his experience purchasing and operating a Kenmore dryer accurately represents the experiences of consumers who purchased and purchased Frigidaire dryers.  Courts in this district have generally held that plaintiffs lack standing to bring CLRA claims based on the marketing of products that they never purchased.  See, e.g., Granfield v. NVIDIA Corp., 2012 WL 2847575, at *6 (N.D. Cal.) ("A plaintiff has standing to assert injury based on a defective product or false advertising only if the plaintiff experienced injury stemming from the purchase of that product."); Carrea v. Dreyer's Grand Ice Cream, Inc., 2011 WL 159380, at *3 (N.D. Cal.) (dismissing plaintiff's CLRA claims related to products that he never purchased because he never "suffered any injury or lost money or property with respect to those products").  A plaintiff therefore may not represent a class in bringing CLRA claims based on products that he or she never purchased.  Mazur v. eBay Inc., 257 F.R.D. 563, 569 (N.D. Cal. 2009) (finding that a plaintiff failed to satisfy the typicality prerequisite "because of her non-consumer status under the CLRA and her atypicality with respect to possible unique defenses").

For all of these reasons, Murray has not satisfied Rule 23(a)'s typicality requirement.

D.   Adequacy

Rule 23(a)(4) establishes as a prerequisite for class certification that "the representative parties will fairly and

United States District Court
For the Northern District of California

adequately protect the interests of the class." Fed. R. Civ. P.
23(a)(4).  Rule 23(g)(2) imposes a similar adequacy requirement on
class counsel.

Murray is not an adequate class representative because, as
previously explained, his claims are not typical of those he seeks
to represent.  A&J Deutscher Family Fund v. Bullard, 1986 WL 14903
(C.D. Cal.) (recognizing "considerable overlap between the
typical[it]y prerequisite of Rule 23(a)(3) and the adequate
representation requirement of Rule 23(a)(4)").  Because Murray has
not satisfied this requirement, there is no need to address the
adequacy of class counsel.

III. Rule 23(b)

As explained above, Murray's motion for class certification
must be denied because he has failed to satisfy the requirements
of Rule 23(a).  This section briefly explains why he has also
failed to satisfy the requirements of Rule 23(b).

A.   Rule 23(b)(2)

A court may grant certification under Rule 23(b)(2) "if class
members complain of a pattern or practice that is generally
applicable to the class as a whole.  Even if some class members
have not been injured by the challenged practice, a class may
nevertheless be appropriate." Walters v. Reno, 145 F.3d 1032,
1047 (9th Cir. 1998); see also 7A Wright, Miller & Kane, Federal
Practice & Procedure § 1775 (2d ed. 1986) ("All the class members
need not be aggrieved by or desire to challenge the defendant's
conduct in order for some of them to seek relief under Rule
23(b)(2).").

United States District Court
For the Northern District of California

Murray has not clearly defined the scope of the injunctive relief he seeks nor has he explained why he is seeking injunctive relief in the first place.  He asserts that he is seeking "an injunction, inter alia, for Sears' deceptive practice of failing to substantiate the performance features of major appliances as directed by the [Federal Trade Commission][8] so he can rely upon the future disclosures of such features by Sears."  Docket No. 210, Pl.'s Reply 9.  This request for relief essentially amounts to a request for an order directing Sears (but, curiously, not Electrolux) to comply generally with existing federal consumer protection regulations -- an obligation that would exist even in the absence of an injunction.  It is not clear how this proposed injunction would redress Murray's alleged injuries or those of the class he seeks to represent.  See Betts v. Univ. of Nebraska Med. Ctr., 1998 WL 34345518, at *11 (D. Neb.) ("Ordering [the defendant] to generally comply with existing law is, if not redundant, broader than necessary to remedy the underlying wrong.").

In any event, Murray has not established that the conduct he complains of -- namely, deceptive representations about the ability of stainless steel dryer drums to prevent rust stains on clothing -- is applicable to the class as a whole.  As noted above, the only plausibly deceptive representations he has identified are the isolated statements of a single salesperson he

---

[8] Although Murray cites a Federal Trade Commission regulation in a footnote of his reply brief, he fails to explain how the agency and its regulations are relevant to his present claims, all of which arise under state law.

met more than ten years ago.  This is not sufficient to establish the need for class-wide injunctive relief.

B.   Rule 23(b)(3)

To qualify for certification under Rule 23(b)(3), "a class must satisfy two conditions in addition to the Rule 23(a) prerequisites: common questions must 'predominate over any questions affecting only individual members,' and class resolution must be 'superior to other available methods for the fair and efficient adjudication of the controversy.'"  Hanlon, 150 F.3d at 1022 (quoting Fed. R. Civ. P. 23(b)(3)).

As explained above, Murray has not identified any relevant legal or factual questions that are common to all putative class members.  As such, he cannot satisfy the predominance or superiority requirements of Rule 23(b)(3).

CONCLUSION

For the reasons set forth above, Plaintiff's motion for class certification (Docket No. 167) is DENIED.  In addition, Plaintiff's motion for leave to file supplemental briefing on class certification (Docket No. 225) is DENIED.  Plaintiff filed a brief on April 9, 2013, without leave of the Court and in violation of the local rules, responding to Defendants' statement of recent decision.  See Docket No. 223.  Further briefing on this issue is not necessary, especially as the Court does not rely on Comcast Corp. v. Behrend, 133 S. Ct. 1426 (2013), in this order. Defendants' objections to Plaintiff's reply evidence are OVERRULED as moot.

A case management conference shall be held at 2:00 p.m. on Wednesday, March 12, 2014, to set a case management schedule for

Murray's individual claims.  The parties shall file a joint case management statement on or before March 5, 2014.

IT IS SO ORDERED.


Dated:  2/12/2014

CLAUDIA WILKEN
United States District Judge